261 P.2d 983

**MENDELSOHN et al. v. SUPERIOR COURT IN AND FOR MARICOPA COUNTY et al.**

No. 5803.

Supreme Court of Arizona.

Oct. 7, 1953.

164

Moore & Romley and John M. Levy, Phoenix, for petitioner Mendelsohn.

Ross F. Jones, Atty. Gen., by James P. Bartlett, Asst. Atty. Gen., for petitioner Duncan.

Minné & Sorenson, Phoenix, for respondents.

UDALL, Justice.

This is an original proceeding for a writ of prohibition requested by petitioners Norman Mendelsohn, hereinafter called Mendelsohn, and John A. Duncan, State Superintendent of Liquor Licenses and Control, hereinafter called the superintendent, to prevent the Superior Court of Maricopa County, and the Honorable Henry S. Stevens, as judge thereof, from assuming jurisdiction and attempting to hear and determine the matters purportedly at issue on appeal from an order of the superintendent. Statutory notice of application for an alternative writ of prohibition was given the respondent, who then appeared and answered. The alternative writ issued.

The material facts are these: On February 13, 1953, Mendelsohn made application to the superintendent for permission to transfer the Series 9 liquor license held by him at 1402 East Washington Street in the city of Phoenix, Arizona, to a new address, 2412 East Broadway, Phoenix, Maricopa County, and to conduct his business at this new address.

Pursuant to Section 72–105 A.C.A.1939, as amended, copies of this application were

filed with the clerk of the board of supervisors of Maricopa County, and posted at the new premises proposed to be licensed.

Within the ensuing twenty days allowed by the statute, certain remonstrants (whose qualifications are set out hereinafter) filed their written objections to the transfer with the board of supervisors and with the superintendent. On March 19th, the board of supervisors held a hearing and recommended approval of Mendelsohn's application to transfer his license.

The recommendation of the board of supervisors, and the filed arguments for and against transferring the license, were transmitted to the superintendent, who on the 6th day of April approved the application to transfer the license.

On April 9, 1953, objectors Pearl Coffer, Harry W. Coffer, N. Marshall, F. Marshall, Gertrude E. Douglas, Mary E. Cason, and Alf Douglas hereinafter called remonstrants, filed in the Superior Court of Maricopa County, cause No. 75384, styling their pleading "Complaint", styling themselves "Plaintiffs and Appellants", and styling Mendelsohn and the superintendent "Defendants and Appellees". Remonstrants therein contend inter alia that the order granting the transfer of license is wrongful and unlawful because the public convenience does not require and will not be substantially served thereby.

In their notice of appeal, served upon Mendelsohn and the superintendent, remonstrants state, "This appeal is made pursuant to Section 72–109, Arizona Code 1939, as amended." In their application for a writ of prohibition, Mendelsohn and the superintendent argue that this section confers no right of appeal upon remonstrants, therefore the proposed assumption of jurisdiction by the Superior Court of Maricopa County is a usurpation of power.

 It is settled law that the right of appeal exists only by force of positive enactment of law, Him Poy Lim v. Duncan, 65 Ariz. 370, 181 P.2d 357, and that prohibition will lie to prevent an inferior tribunal from entertaining an appeal over which it has no jurisdiction, Duncan v. Superior Court of Pinal County, 65 Ariz. 193, 177 P.2d 374.

### The Issue

Thus, we are faced squarely with this question: Under the liquor laws of Arizona, Chapter 72, Art. 1, A.C.A.1939, where the superintendent has granted an application for transfer of a liquor license, do the remonstrants opposing such transfer have the right to appeal to the superior court from the order of the superintendent?

### The Statute

Section 72–109(c), A.C.A.1939, provides:

"The decision of the superintendent shall be final in any matter relating to the issuance, transfer, renewal, suspension, or revocation of a license, unless the person aggrieved, within ten (10) days after the date of the decision,

files an appeal with the superior court of the county in which the licensed premises are located. In such appeal, the court shall hear and determine the matter de novo, not more than ten (10) days after the date of filing the appeal. Pending determination of the appeal, the decision and order of the superintendent shall remain in full force and effect unless otherwise ordered by the court·of jurisdiction."

In the briefs the greatest battle rages round the meaning of the phrase "the person aggrieved". The word "person" is defined in Section 72–101 of the Act as follows, " 'Person' includes partnership, association, company or corporation, as well as a natural person". Mendelsohn makes much of the fact that "person" is singular and not plural, but Section 1–103, A.C.A. 1939, setting forth the general rules of statutory construction in Arizona, refutes any argument based on this premise by telling us the singular does include the plural.

### The Phrase

We find that whether the legislature has given remonstrants the right to appeal cannot be determined by looking only to the phrase "the person aggrieved". Our exhaustive examination of the law and cases in Words and Phrases "Aggrieved" and "Person Aggrieved", Corpus Juris Secundum "Aggrieved", and Black's Law Dictionary, 3rd ed., "Aggrieved Party", served to remind us of what Humpty Dumpty told Alice—"When I use a word, it means just what I choose it to mean—neither more nor less." Chapter Six, Through the Looking Glass, Charles Dodgson. We find the phrase to have one meaning in probate procedure and quite another in sanity hearings, etc. For this reason, Justice Lockwood's construction of the phrase in Burmister v. City of Prescott, 38 Ariz. 66, 297 P. 443, is not in point—the fact situation is too dissimilar. Apart from its syntactical and sociological setting the phrase has no meaning. There is nothing intrinsic and peculiar to the phrase, qua phrase, that leads one unwaveringly to one conclusion or the other. Accordingly, the question of whether these remonstrants have the right to appeal must be bottomed on something more substantial than a pedantic construction of two adjectives and one noun.

### Analysis of Previous Decisions

In the case of Stanton v. Superior Court, 55 Ariz. 514, 103 P.2d 952, the facts were that one M. R. Patton had applied to the superintendent of liquor licenses and control for a license for the wholesale distribution of liquor. Stanton, who held such a license, was the remonstrant in the proceedings before the superintendent, and after the latter ordered that the license should issue, Stanton filed his appeal to the superior court.

The reporter's transcript in that case shows that counsel for the superintendent moved to dismiss the appeal upon the same ground relied upon here, to wit, that the remonstrant was not "the person aggriev-

ed" within the meaning of the appeal provisions of the Spirituous Liquors Act. The superior court reserved a ruling on this motion, then after taking evidence, proceeded to determine the matter on its merits and affirmed the action of the superintendent in granting the license. By necessary implication, the superior court in entering its judgment must have determined that it had jurisdiction of the appeal.

By certiorari the matter was brought before this court for review upon an allegation that the lower court was without jurisdiction in the entry of said judgment in that there was no competent evidence to support its finding that the public convenience required and would be substantially served by the issuance of the license applied for. Stanton contended that the legislature intended to establish as the controlling principle in the issuance of liquor licenses, the system of regulated monopoly. We rejected this contention and held that the superintendent and the superior court did not abuse their discretion or exceed their jurisdiction in granting Patton a liquor license. The question of whether Stanton had the right of appeal to the superior court in the first instance was not presented to us, nor was it directly decided. Apparently it was taken for granted the lower court had jurisdiction to entertain the appeal and that a review by certiorari was proper in this court.

Lane v. Ferguson, 62 Ariz. 184, 156 P.2d 236, was an original mandamus action brought by an unsuccessful applicant for a liquor license to require respondent (Judge Ferguson) to honor a stipulation and assign applicant's appeal to the superior court from the superintendent's ruling, to the judge agreed upon by the parties. The alternative writ was made peremptory, and inter alia we held that the remonstrants were not parties ipso facto to an appeal by the applicant, and that while they might intervene in such appeal, they took the court and the judge as they found them. But unfortunately, some wording in the Lane opinion infers that remonstrants do not have the right to appeal an adverse ruling to the superior court. We submit this was dicta, because this issue was not before the court.

Mayberry v. Duncan, 68 Ariz. 281, 205 P.2d 364, 365, was a liquor license matter brought before us by an appeal from a judgment of the trial court in a certiorari proceeding. By analogy it is consonant with our conclusion in the instant case. There appellee Duncan moved to dismiss the appeal on the ground that appellant Mayberry was neither a "party beneficially interested" under the certiorari statute, nor a "party aggrieved" within the meaning of the judgments appealable statute. By a minute order the motion to dismiss was denied, and the appeal was then determined on its merits. Thus we held that one who was not a party to the proceedings before the superintendent—whose status was simply that of a member of the public but

whose interests were affected—had sufficient interest in the matter of issuance and transfer of liquor licenses to bring certiorari in the superior court to test the jurisdictional bases of the superintendent's orders regarding the same.

### A Citizen's Right to Be Heard

Section 72–105(b) A.C.A.1939, as originally enacted, set no limitations upon the right to favor or oppose the granting of a license. Under the law as amended by Chapter 126, Laws of 1952, such parties must come from a limited class of persons, viz.:

"* * * any person who is a bona fide resident of the age of twenty-one years or more residing, owning or leasing property within a one-half mile radius from the proposed premises to be licensed, * * *." is given the right to file written arguments in favor thereof or objections thereto with the city clerk.

The same procedure governs both issuance and transfer of licenses, Section 72–108(d), and the proponents or opponents to the issuance or transfer are entitled to file written arguments with the city council or county board of supervisors within twenty days after the posting of the notice of application on the premises proposed to be licensed, Section 72–105(b).

The local body then considers the matter and enters its order recommending that the application be approved, disapproved, or submitted without recommendation. Section 72–105(b) further provides that a copy of this order, together with the written petitions on file, shall be sent to the superintendent, and thus by force of statute the remonstrants are parties to the proceedings before the superintendent.

Section 72–105(d) declares that the superintendent shall consider the order and the other facts in his possession relating to the qualifications of the applicant, and Section 72–108(a) declares that the license shall issue only after satisfactory showing of the capability, qualifications and reliability of the applicant, and that the public convenience requires and will be substantially served by such issuance.

The changes which have been made in the liquor law since the Stanton, Lane, and Mayberry cases, strengthen our conviction that those entitled to be heard on the granting of a license have the potential right of appeal. In the matters of issuing and transferring liquor licenses, the Act envisages participation by four parties, namely: the applicant; the State, through the superintendent; the local political governing body, either city council or county supervisors; and those citizens who will be peculiarly affected by granting the license because of their close ties to the neighborhood wherein the liquor business will operate. The Lane case indicated that under the Act at that time, any member of the general public might be a remonstrant, and therefore the interest of any given remonstrant was no more than that of any other

citizen in the State. Since the changes in the liquor law, an opponent or proponent must have a more direct and personal interest in the matter.

### Statutory Construction

The cardinal principle of statutory interpretation is that the intent of the legislature is to be ascertained and followed. The second, at least in Arizona, is that statutes shall be liberally construed to effect their objects and to promote justice, Section 1–101, A.C.A.1939. These principles of interpretation take precedence over all others, the remaining rules being only ancillary and used to assist in the proper application of the two first set forth, State v. McEuen, 42 Ariz. 385, 26 P.2d 1005. The court when construing a statute should give it a sensible construction, such as will accomplish the legislative intent and if possible avoid an absurd conclusion or avoid making the statute invalid, State v. Airesearch Mfg. Co., 68 Ariz. 342, 206 P.2d 562; Frye v. South Phoenix Volunteer Fire Co., 71 Ariz. 163, 224 P.2d 651.

The liquor laws of Arizona are plainly designed to protect the welfare, health, peace, temperance, and safety of all the citizens by providing for the strict regulation and control of the manufacture, sale, and distribution of alcoholic beverages. Sutherland on Statutory Construction, 3rd ed., Sec. 7203, comments:

"Liquor control legislation, while incidentally intended in some cases to produce revenue, has as its primary aim the protection of public welfare by preserving health, and eliminating intemperance and the undesirable social and moral effects commonly associated with the saloon. * * *"

Our holding herein promotes these worthy objects by assuring ample opportunity for investigation of the qualifications of the applicant and the exigencies of the public.

Another established rule of statutory construction is that words and phrases in a statute are to be accorded their obvious and natural meaning. A corollary of this is the rule that the legislature is presumed to express its meaning in as clear a manner as possible.

Applying these principles to the case at bar, we see that the clearest way to express the intent that only the applicant should have the right of appeal is to use the phrase, "the applicant aggrieved". Similarly, the clearest way to express the intent that only the remonstrant should have the right of appeal is to use the phrase, "the remonstrant aggrieved". Instead of these more specific terms, the legislature chose the phrase "the person aggrieved", which has a broader signification than either and is reasonably capable of embracing both. Had the legislature meant to limit the right to one of the two parties it could have used, and doubtless would have used, a more limited term. If petitioners' theory were adopted, then only a person

whose application had been denied by the superintendent would have a right to appeal. This would make a very one-sided statute of it. In our opinion the plain meaning is that the legislature, in a situation such as we are here confronted with, conferred the right of appeal upon applicant and remonstrant alike.

This construction accords with the general rule set forth in Sutherland on Statutory Construction, 3rd ed., Section 6807:

"Statutes Allowing Appeals. Statutes giving the right of appeal are liberally construed in furtherance of justice, and an interpretation which will work a forfeiture of that right is not favored. Thus provisions limiting the time for bringing an appeal are liberally interpreted so that the party pursuing the remedy of appeal will not be defeated on mere technicalities. Likewise, an interpretation limiting the cases from which an appeal may be brought, or the person who may bring an appeal is not preferred * * *."

### Cases from Other Jurisdictions

Many decisions deal with the problem of construing the phrase "person aggrieved" or "aggrieved person", though few of them deal with analogous fact situations. But, the Arkansas court dealt with a statute similar to ours, and held that either the applicant or the remonstrant could appeal, stating,

"* * * The right of appeal is guarantied to any party aggrieved, and it may be exercised by the losing party in these proceedings. * * *" Whissen v. Furth, 73 Ark. 366, 84 S.W. 500, 501, 68 L.R.A. 161; and see Freeman v. Lazarus, 61 Ark. 247, 32 S.W. 680; In re McCullough, 51 Ark. 159, 10 S. W. 259.

A similar ruling was made by the Supreme Court of Connecticut in the cases of Appeal of Beard, 64 Conn. 526, 30 A. 775, and Kamerman v. LeRoy, 133 Conn. 232, 50 A.2d 175.

### Conclusion

Unquestionably, our liquor legislation envisages participation by the general public in the administration of the liquor laws. We believe the more reasonable interpretation of the Act is that the scope of this participation is not limited to protesting to the local governing body or the superintendent, but extends to initiating appeals to the superior court from the orders of the superintendent. Granting the right of appeal to the applicant while denying it to the citizens would run counter to the spirit of strict regulation permeating the whole of the Act. The persons upon whose doorsteps the liquor business will operate, and whose businesses, homes, and families will be affected thereby, are given the same rights as those who seek to engage in the liquor traffic.

Notwithstanding anything said in the Lane case to the contrary, we hold the re-

monstrants have a right of appeal to the superior court.

Alternative writ quashed.

STANFORD, C. J., and PHELPS and WINDES, JJ., concur.

LA PRADE, Justice (dissenting).

I do not agree with the determination made by the majority members of this court for the reason that the statutory interpretation made is not reasonably permitted under the statutes. The majority conclude by saying:

"Unquestionably, our liquor legislation envisages participation by the general public in the administration of the liquor laws. We believe the more reasonable interpretation of the Act is that the scope of this participation is not limited to protesting to the local governing body or the superintendent, but extends to initiating appeals to the superior court from the orders of the superintendent. Granting the right of appeal to the applicant while denying it to the citizens would run counter to the spirit of strict regulation permeating the whole of the Act. The persons upon whose doorsteps the liquor business will operate, and whose businesses, homes, and families will be affected thereby, are given the same rights as those who seek to engage in the liquor traffic."

As pointed out in our case of Lane v. Ferguson, 62 Ariz. 184, 156 P.2d 236, 238, in a unanimous opinion that I authored for this court, it is said:

"* * * that the legislature, in creating the Department of Liquor Licenses and Control, intended to create and establish state-wide control over the traffic in intoxicating liquors. The need of its regulation and control is undisputed. In a search for a system of effective, impartial, and uniform regulation and control of this traffic, our legislature first enacted Chapter 76, Sess.Laws 1933, then Chapter 46, Sess. Laws 1935, then later Chapter 64, Sess. Laws 1939, being Chapter 72, A.C.A. 1939. *This system is a departure from that which had long existed here prior to the advent of national prohibition. Then the regulation and control of every phase of the liquor traffic was vested exclusively in local governing bodies.* Running through the entire act is the central idea that the traffic in intoxicating liquors is a problem that is state-wide; and correspondingly that only state supervision and control can adequately cope with it. The superintendent is charged with the administration and enforcement of the act." (Emphasis supplied.)

Then followed this conclusion:

"The only remnant of local participation in the administration of the liquor traffic is contained in section 72-105, A.C.A.1939. This section specifically provides that notice of the appli-

cation for a liquor license must be noticed on the premises, 'with a statement requiring any person opposed to the issuance of the license to file his written objections with the clerk.' "

At the time the Lane case was decided *any* person could file objections with the local boards. By the 1952 amendment the right to object has been circumscribed and only those persons who reside, own or lease property within a half-mile radius of the proposed premises to be licensed can voice objections. By this amendment the statute for the first time has recognized proponents for the issuance of a license or transfer thereof, and if they live within a half-mile radius they may file written arguments in favor of the application.

I am still of the opinion that all of the statutes relating to the licensing and traffic in liquors demonstrate that its regulation and control is a matter of state-wide concern, and that its entire supervision and control is lodged in the Department of Liquor Licenses and Control under the supervision of the superintendent thereof. The number of licenses to be issued is fixed by statute, Section 72–107, A.C.A.1939. As to whether a license should issue in the first instance is solely within the discretion of the superintendent, subject to review, as provided in Section 72–109(b) (id.) as amended. In determining whether a license should issue the superintendent is mandated to look into the capability, qualifications and reliability of the applicant,

and shall determine whether the public convenience requires and will be substantially served by the issuance of such license. Section 72–108 (id.) as amended. In determining these matters he shall receive the advice of the city council where it is proposed that the license will be located in an incorporated city or town; if outside of an incorporated city or town the advice will come from the board of supervisors. The advice in either instance will be in the nature of (1) an approval, (2) a disapproval, or (3) a submission without recommendation. Section 72–105 (id.) as amended.

It is only when the governing body recommends that a license do *not* issue that it is compelled to insert a statement of the reasons therefor. In the instant case, according to the allegations for the writ of prohibition, the governing body recommended the transfer of the license. The governing body was not required to furnish a statement of its reasons for recommending the transfer. Nevertheless the statute provides that

"* * * *All petitions* submitted to the governing body within the twenty (20) day period for the filing of protest shall be transmitted to the superintendent with the certified copy of the order." Sec. 72–105(b) as amended. (id.) (Emphasis supplied.)

According to the petition for the writ, it appears that the superintendent had before him the fact that there was a petition containing approximately 117 names opposing

the transfer, some of whom did *not* live within a half-mile radius of the building into which it was proposed to transfer the license and business, and hence were not entitled to object, together with another petition containing approximately 294 signatures of residents, all of whom lived within the half-mile radius, petitioning that the transfer be allowed on the ground that public convenience required it.

By the provisions of subparagraph (d) of this section, when the superintendent receives the *order* from the governing body he is required to "consider such order together with other facts in his possession relating to the qualifications of the applicant." This section does not specifically require the superintendent to examine the petitions for or against. Since the statute requires that petitions for or against be transmitted with the *order* of the governing body it is fair to assume that it was intended that the superintendent should take cognizance of the petitions and examine them. Presumably he might get some information from such an examination in assisting him in exercising his discretion. So far it would appear from the statutes that petitioners for or against had not acquired any status in the proceedings except to give advice to the local boards, who will transmit that advice to the officer who is ultimately to decide the matter as the state official in whom the legislature, in the overall administration and regulation to the traffic in liquor, has vested the ultimate discretion. It is when we come to subdivision (c) of Section 72–109 (id.) as amended that any claim can be made that objectors are parties to the proceedings for all purposes including the right to perfect appeal. This subdivision (c) in part provides:

> "The decision of the superintendent shall be final in any matter relating to the issuance, transfer, renewal, suspension, or revocation of a license, unless *the person aggrieved,* within ten (10) days after the date of the decision, files an appeal with the superior court of the county in which the licensed premises are located. * * *"

(Emphasis supplied.)

I am satisfied that the statute, in giving the right of appeal to the "aggrieved person" refers exclusively to the applicant for the issuance, transfer or renewal of a license and also exclusively applies to a licensee who has had his license suspended or revoked by the superintendent. Subsection (b) of this section provides for the suspension or revocation of licenses after a hearing. A large segment of the public might be inconvenienced by the fact that a license had been suspended or revoked and wholly in disagreement with the announced reasons for suspension or revocation. But can it be said that they are "aggrieved persons" within the meaning of the appeal statute? Can it be said that those 294 persons who were recommending that the transfer of license be granted for their con-

venience can be classified as aggrieved persons within the appeal statute? The majority would have to answer this query in the affirmative if they were to be consistent. The ridiculousness of an affirmative answer is apparent. The majority opinion has overlooked this possible situation and is wholly concerned with the fact that there are objectors who are sorely aggrieved and hence entitled to appeal. If the residents in a community who want a liquor license in their neighborhood cannot be parties to an appeal, then how can objectors become parties to an appeal? In the supervision and control of the liquor traffic the state has provided for an over-all supervision and entrusted the superintendent with the authority and discretion to supervise it according to the dictates of the statutes. The statute here provides for a limited portion of the public to be heard and to give their advice and recommendations to the superintendent to assist him in reaching an honest conclusion as to whether the public convenience will be subserved by the issuance or transfer of a license. When the superintendent has exercised his discretion he has exercised the discretion of the state. When the statutes do not provide for the privilege of appeal to objectors or proponents the right does not exist. The legislature has provided that the right of appeal vests in "the aggrieved person". The aggrieved person, for the purpose of an appeal, can only be the applicant for a license or a licensee who has had his license suspended or revoked. The resort to rules of statutory construction and definitions to the effect that the singular includes the plural and the granting of an appeal to an aggrieved person must be interpreted to mean that "person" means "persons", and that persons can only refer to objectors and hence objectors are aggrieved persons, is most tenuous.

That there are persons who are unhappy, dissatisfied, provoked or "aggrieved" by the decision of the superintendent does not make them the aggrieved person upon whom the right of appeal is conferred. The statutes contemplate that the superintendent should be advised of the wishes and judgment of both proponents and objectors but they do not contemplate that because they are unhappy or dissatisfied that their dissatisfaction takes on the stature of making them parties with the right to invoke the solemn processes of the Superior Court to review the decisions of the state superintendent. In the first instance the citizens whose interests are to be affected by the issuance or denial of a license, make known their desires in the matter by advising the local boards in whom some discretion is vested. The local boards in turn then transmit their advice by an order, thus necessarily exercising some of the state's sovereignty. It appears to me that the written judgment (order) of the local board is of more dignity than the desires or wishes of the proponents or objectors. The appeal statute does not authorize an appeal by the local boards from the decisions of the su-

perintendent, regardless of how dissatisfied the boards might be because the superintendent, in his judgment in supervising the liquor laws, from a state-wide view, determines that the opinion of the local board is circumscribed, unreasonably prejudiced, or evidences provincialism Still a fair interpretation of the majority opinion confers upon the local governing boards the right of appeal under the elastic interpretation of who is an "aggrieved person".

There being no right of appeal in the instant case, the Superior Court was without jurisdiction to entertain the appeal and for this reason a peremptory writ should issue.