Jardine *v.* Upper Darby Lodge No. 1973,
Appellant.

Argued January 21, 1964. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Robert W. Beatty,* with him *Ernest L. Green, Jr.,* and *Butler, Beatty, Greer & Johnson,* for appellant.

*Alexander A. DiSanti,* with him *Berman, Richard & Brian,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, March 17, 1964:

In the early morning of October 19, 1958, Thomas J. Gross, after several hours of beer drinking, the last

bottle having been consumed in an establishment known as Upper Darby Lodge No. 1973, Inc., in Delaware County, got into his automobile, drove along Marshall Road and struck James J. Jardine, a pedestrian, injuring him seriously and killing a woman (whose case is not involved here). Immediately after the fatal crash, Gross ran out of his car shouting: "Why did I do it, why did I drink? Why did I drink and drive?"

The pedestrian James J. Jardine brought an action of trespass against the Upper Darby Lodge, charging it with unlawful negligence in that its bartender served intoxicating liquors to Gross when he was already visibly intoxicated. He also sued Gross for his direct negligence.

The Upper Darby Lodge brought in as additional defendants one George Goldsmith, charging him with having so parked his truck as to precipitate the fatal accident, and the Tri-County Veterans Home Association, Inc., charging that Gross had been served intoxicating beverages at that place. The court entered a nonsuit in favor of the Tri-County Veterans Home Association and Goldsmith was absolved by the jury, so that there is no necessity to refer to those defendants again. The jury returned a verdict in the sum of $12,-500 in favor of the plaintiff against Gross and the Upper Darby Lodge. The Upper Darby Lodge appealed and is the sole appellant here.

It contends that there was not sufficient evidence presented at the trial to support the finding of the jury that Gross was visibly intoxicated when he was served the last bottle of beer at the Lodge and that, in addition, it was not proved that Gross's alleged intoxication was the proximate cause of the plaintiff's injuries.

Gross left the Lodge at 4:15 a.m., the accident occurred at 4:29 a.m., and at about 5:10 a.m. he was examined by Dr. Paul D. Shore, police surgeon for the

Township of Upper Darby, who pronounced him intoxicated and, in answer to a hypothetical question, stated that in his opinion Gross was visibly intoxicated before he obtained his last beer at the Upper Darby Lodge. The doctor described Gross's condition, at the time of the examination, as: "Eyes bloodshot, speech thick, he was very upset, emotionally disturbed, his gait was unsteady, his co-ordination was poor." In addition he said that Gross smelled of alcohol "very strongly." The doctor testified further that Gross told him he had drunk 20 bottles of beer during several hours preceding the accident. Later, the doctor said, that he wasn't certain whether Gross had admitted to 20 beers or from 10 to 20.

The appellant contends that Dr. Shore's testimony should not have been submitted to the jury because opinion testimony "is the weakest type of evidence." In support of this contention, its counsel cites several cases including *Peterman Will*, 367 Pa. 302, where this Court said that the opinion of a handwriting expert that the decedent did not sign the will there under consideration could not prevail over two subscribing witnesses who saw the decedent sign. Specifically we declared that: "The opinion testimony of a handwriting expert, *standing alone,* is insufficient to overcome direct and positive *factual* evidence of the two subscribing witnesses." (Emphasis supplied)

The testimony of Dr. Shore here by no means "stood alone." As a matter of fact, this case could have well gone to the jury on the other evidence, to the exclusion of Dr. Shore's opinion. The officer who arrived at the scene of the accident one minute after it occurred testified categorically that Gross was "visibly drunk," and that he was so upset over the havoc he had caused, the dead body of one pedestrian and the unconscious body of another lying on the ground before him, that he had to be restrained so that he might

not injure himself. The officer said that, excluding the displayed emotion of Gross because of the accident itself, Gross was "just drunk." This was only 14 minutes after he had left the Upper Darby Lodge where he had consumed his last bottle of beer and there was no evidence that he had gone elsewhere during those 14 minutes. A witness by the name of Kilcullen testified he saw Gross at the Lodge and observed that as he was drinking a bottle of beer, his eyes were bloodshot.

It must be particularly noted also that Dr. Shore's testimony was only partially hypothetical. When this Court has placed slight value on opinion testimony, it has most frequently been in a situation where the expert had little if any physical contact with the matter in controversy. But here the doctor saw Gross, talked with him and examined him within less than an hour after the accident. In practically every drunken driving case the examining doctor does not see the accused motorist until after the event which makes him a defendant, yet the doctor's evidence is accepted as relevant, competent and revelatory.

The other cases cited by the appellant on the subject of a doctor's opinion are so wholly different, in their facts and projection, from the one at bar, that it would be supererogatory to discuss them.

The Act of April 12, 1951, P. L. 90, §493, as amended, 47 P.S. §4-493, provides that: "It shall be unlawful for . . . any . . . person to sell, furnish or give any liquor or malt or brewed beverages, or to permit any liquor or malt or brewed beverages to be sold, furnished or given, to any person visibly intoxicated."

The appellant argues that "Pennsylvania law is clear that the violation of the statutory provisions must be the proximate cause of the occurrence, and if it be not the proximate cause, there is no liability."

Obviously intoxication must be the proximate cause of the accident for no one would seriously maintain

that if a dispenser of liquor sold liquor to a visibly intoxicated person on Monday and he became involved in an accident on Wednesday, when stone sober, tort liability could attach to the liquor dealer. The question of proximate cause was submitted to the jury in this case under proper instruction and the jury resolved the question in favor of the plaintiff.

The appellant points to the dramshop Act of May 8, 1854, P. L. 663, which imposed civil liability on persons furnishing intoxicating drinks to persons visibly intoxicated who later injured third persons. This Act was repealed by the Act of 1951, supra, and the appellant argues from this that there is nothing in that statute, or any other statute, which replaces the dramshop Act. The repeal of the dramshop Act did not wipe out the remedy which that Act afforded victims of intoxicated persons. The Superior Court said in *Schelin v. Goldberg,* 188 Pa. Superior Ct. 341, "When an act embodying in expressed terms a principle of law is repealed by the legislature, then the principle as it existed at common law is still in force."

Since an intoxicated person is and can be an instrument of danger to others, especially if he is operating a motor vehicle, the Legislature of Pennsylvania declared by the Act of 1951, as already stated, that it shall be unlawful for any person to sell liquor to one already intoxicated. The first prime requisite to de-intoxicate one who has, because of alcohol, lost control over his reflexes, judgment and sense of responsibility to others, is to stop pouring alcohol into him. This is a duty which everyone owes to society and to law entirely apart from any statute. The person who would put into the hands of an obviously demented individual a firearm with which he shot an innocent third person would be amenable in damages to that third person for unlawful negligence. An intoxicated person behind the wheel of an automobile can be as dangerous as an in-

sane person with a firearm. He is as much a hazard to the safety of the community as a stick of dynamite that must be de-fused in order to be rendered harmless. To serve an intoxicated person more liquor is to light the fuse.

Section 286 of Restatement, Torts, provides: "The violation of a legislative enactment by doing a prohibited act, or by failing to do a required act, makes the actor liable for an invasion of an interest of another if . . . :

"(b) the interest invaded is one which the enactment is intended to protect."

The Act of 1951, supra, would make the Upper Darby Lodge liable for its invasion of the interests of James J. Jardine, who became the target of the Lodge's actions, through the instrumentality of illegally selling liquor to Gross. The appellant cites the case of *Smith v. Clark*, 411 Pa. 142, in support of its position. The principle laid down in that decision stands opposed to that position. This Court said:

"The Act of 1951, P. L. 90, 146 . . . makes it unlawful for any licensee to sell or furnish any liquor or malt or brewed beverages to a minor or to a visibly intoxicated person . . . If the intoxicating beverages are sold in violation of this statute, this constitutes negligence, and if the unlawful act or acts are the proximate cause of an injury, the violator is responsible in damages for the loss suffered."

The jury in the instant case found, on competent and sufficient evidence, that Gross was intoxicated when he was sold intoxicating beverages at the appellant's establishment and that his intoxication was the proximate cause of the injuries inflicted on the plaintiff.

We find no error in the trial and the judgment is affirmed.