489 P.2d 29

**Rudolph PACHT, Appellant,**

**v.**

**Durle V. MORRIS et al., Appellees.**

**No. 10345.**

Supreme Court of Arizona,
In Division.

Sept. 29, 1971.

Rehearing Denied Oct. 27, 1971.

Pain & Julian by Theodore A. Julian, Phoenix, for appellant.

Stevenson, Warden & Smith by Robert W. Warden, Flagstaff, for appellees.

CAMERON, Justice.

The plaintiffs, Durle and Constance Morris, collided with a dead horse on U.S. Highway 160 in Coconino County, Arizona. This is an appeal from a jury verdict and judgment in favor of the plaintiffs, Durle and Constance Morris, in the amount of $40,073.35 aggregate, as the result of personal injuries sustained in the collision.

We are called upon to decide, according to appellant's questions:

"1. Whether the Court erred in refusing to give defendant's requested jury instructions on the subject of plaintiff's speed in view of the testimony that the plaintiff was exceeding the posted prima facie speed limit.

"2. Whether sufficient evidence of proximate cause was presented from which it might have been reasonably inferred that any allegedly negligent conduct on the part of the defendant was the proximate cause of plaintiff's injuries.

"3. Whether the Court erred in failing to grant the continuance and/or a mistrial and/or a new trial on the basis of the surprise testimony of Dr. McDonald concerning plaintiff's alleged permanent serious injuries which surprise testimony could not have been prevented by ordinary prudence.

"4. Whether the verdict was excessive and as a result of prejudice and bias of the jury."

The facts necessary to decide this matter on appeal are as follows. Defendant Pacht was returning to his California residence on U.S. Highway 160 in Coconino County, Arizona, after picking up his daughter at Colorado College in Colorado Springs, Colorado. At about 9 PM on the unlighted route, several horses crossed the road in front of his car. Unable to stop in time or to otherwise avoid the collision, Mr. Pacht's vehicle struck a dark bay. The impact was at the driver's side front headlight and bumper area. The impact lifted the horse—which struck the windshield—and the animal was tossed lifeless to the roadway. Mr. Pacht continued on to Tuba City some 26 miles away where he reported the incident.

Meanwhile, another passing motorist advised a nearby police officer of the hazard. Officer Charlie, a Navajo tribal policeman, proceeded back to the scene of the acci-

dent. Upon arriving he aimed his spotlight at the horse, turned on his flashers and was about to leave the car to place warning flares. At that time the Morris car appeared over the rise some 100 to 150 yards from the horse. Office Charlie blinked his lights in warning. Mrs. Morris, the driver, taking the blinking to be a request to dim her lights, similarly blinked her lights. The Morris car proceeded on course and when the obstacle came within headlight view, Mrs. Morris unsuccessfully attempted to swerve. The car struck the horse and careened into the police car. This sequence occurred before Officer Charlie had time to get out of his vehicle.

## SPEED INSTRUCTION

■ Appellant requested the following instruction:

> "You are instructed that no person shall drive a vehicle on a highway at a speed greater than is reasonble and prudent under the conditions and having regard to the actual and potential hazards then existing."

Appellant concedes that this instruction is directed to the issue of contributory negligence. To substantiate his request, appellant notes Officer Charlie's in-court estimate of the speed of the Morris vehicle, immediately prior to the collision, as being 60 to 65 miles per hour in a 60 mile per hour zone. This testimony, it is contended, mandates the giving of the instruction. We cannot agree. While it may be that the instruction could have been given without error on the part of the trial court, that does not mean that it was error to refuse said instruction. In this case the court instructed on contributory negligence and the jury was apprised by the testimony that the posted limit was 60 m. p. h. The officer's report, as filed, indicated the speed of the Morris car at 55 miles per hour. Mrs. Morris similarly testified her speed was between 55 and 60 m. p. h. Additionally, the posted speed is "prima facie", i. e. it may be that under the circumstances and conditions of the roadway,

weather, etc. that 65 m. p. h. would not be negligent operation. Notwithstanding the lack of conclusive evidence of excessive speed, appellant still had full benefit of his theory. Instructions must be read as a whole. We find no reversible error here.

## PROXIMATE CAUSE

■ A proximate cause of an injury is any cause which in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the injury would not have occurred. MARJI No. 9 (Revised). See Alires v. Southern Pacific Company, 93 Ariz. 97, 378 P.2d 913 (1963). Appellant contends that his negligence, if any, in failing to take some remedial action by either warning people or moving the horse could not have been a proximate cause of the Morris injuries. First, it is asserted, he alone could not have physically moved the horse. Secondly, appellant asserts Office Charlie undertook warning far beyond that which Pacht could have and nonetheless the accident occurred. In order to place this problem in its proper focus, a return to the facts is necessary. Shortly after impact, Mr. Pacht passed Officer Charlie's vehicle on the side of the road. He did not stop then to report the collision nor did he stop at impact to see what, if anything, could be done. Appellant notes, by way of confession and avoidance of his failure, that he had glass in his eye and that immediate medical attention to himself and the occupants of his car was necessary. We note, however, that no aid or treatment was sought for this injury until the next day. It was, at worst, a minor injury.

This court need not speculate as to what would have occurred had the appellant fulfilled his duty to stop or, minimally, had notified Officer Charlie when he passed. This failure, as the jury has determined, was a proximate cause of the injury complained of. Reasonable men could conclude that had he stayed there he and Office Charlie could have moved the horse or

that, had the time differential been reduced by a more prompt notification, complete safety precautions could have been taken. Had Mr. Pacht done what was reasonable under the facts and circumstances and the accident nonetheless occurred, this argument would have vitality. The facts in this case, however, reveal an unreasonable disregard for the hazard created. See Mesa City v. Lesueur, 21 Ariz. 532, 190 P. 573 (1920).

## SURPRISE TESTIMONY

■ When the victims were treated in Flagstaff Hospital, Dr. Richard McDonald attended them. He again examined the patient shortly prior to trial, but subsequent to the termination of pretrial discovery. By x-ray comparison of before and after shots and based on the medical history given him, he expressed an opinion as to the permanency of the injury. Appellant claimed surprise and asked for a continuance which was denied. Denials of motions for the declaration of a mistrial and for a new trial on the same ground followed. In essence, the surprise complained of is not that the injury was permanent, but that Dr. McDonald so testified.

The complaint alleged that these injuries were "permanent in character and effect." Dr. R. T. McDonald was known to be a potential plaintiffs' witness prior to pretrial and was listed on plaintiffs' list of proposed witnesses. His desposition could have been taken to demonstrate his earlier opinions, if any; it was not. His opinion and the grounds therefore were fully discoverable. Deposing Dr. McDonald prior to trial would have given appellant the impeaching evidence he desired. A physical examination of Mrs. Morris could have been had for purposes of verifying the extent of her injuries to the date of the completion of discovery. The orthopedic rebuttal evidence which appellant sought to obtain by continuance could have been provided by a physical examination of the plaintiff prior to the trial.

Plaintiffs' list of witnesses and exhibits notes that Dr. McDonald "will illustrate his testimony by use of x-rays." That statement further noted "plaintiffs will give medical authorization to defendant to examine any of these materials prior to trial."

We find full concurrence with the trial court which, in overruling the motion, stated:

"Well, I don't know about you, but I've never tried a lawsuit in my life that there wasn't some surprise evidence came in from the other side. You knew that they were claiming the permanency of an injury. You knew that they were going to call Doctor McDonald."

We find no surprise where the facts testified to are supportive of the allegation of permanent injury which was maintained by plaintiff throughout.

## EXCESSIVE VERDICT

■ Appellant argues that the verdict is extremely excessive and demonstrates "the obvious bias and sympathy of this jury." We cannot agree. The recovery, in the main, was $37,703.75 for Constance Morris. Taken most favorably to support the verdict, the evidence reveals that Mrs. Morris was 24 at the time of the accident, had a life expectancy of 50.8 years, was hospitalized 12 days, in a cast for approximately 3 months or more, has suffered severe restriction of her family and recreational activities, has developed a permanent limp due to a "frozen" ankle and has endured pain and suffering. Additional surgery as well as complications such as arthritis—common in such injuries—may be indicated. When viewed against the permanency of the injury we cannot say that the award shocks the conscience of the court. See Dykeman v. Ashton, 8 Ariz.App. 327, 446 P.2d 26 (1968), also 11 A.L.R.3d 9.

"While this court, had it been the trier of fact in this case, might have found a lesser sum would be sufficient to reasonably compensate plaintiff for the damages which she had incurred, we are, nevertheless, unable to say that the amount of the verdict was so grossly ex-

cessive as to inflict a shock upon our conscience." Dykeman v. Ashton, supra at 331, 446 P.2d at 30.

Judgment affirmed.

HAYS, V. C. J., and LOCKWOOD, J., concur.