596 P.2d 705

Danny Allen LEWIS and Faye Lee Lewis, husband and wife, for and on behalf of Hazel Christina Lewis, Deceased, Plaintiffs/Appellants,

v.

Mel WOLF and Helen Wolf, husband and wife, dba Tojo's Bar, Defendants/Appellees.

No. 2 CA–CIV 3116.

Court of Appeals of Arizona, Division 2.

March 30, 1979.

Rehearing Denied April 25, 1979.

Review Denied May 30, 1979.

Haralson, Kinerk & Morey, P. C., by Burton J. Kinerk and Carter Morey, Tucson, for plaintiffs/appellants.

Chandler, Tullar, Udall & Redhair by D. B. Udall, Tucson, for defendants/appellees.

## OPINION

HOWARD, Judge.

This is another one of those cases where an innocent life has been snuffed out by a drunk driver. The facts considered in the light most favorable to appellants are as follows. On April 14, 1976, Niles Barnes was a customer in Tojo's Bar. He was served alcoholic beverages despite the fact that he was visibly intoxicated. He left Tojo's in his automobile, stopped briefly at another bar and then collided head-on, at a speed in excess of 80 miles per hour, into the Lewis automobile, killing Hazel Lewis and injuring her parents. The trial court granted the bar owner's motion for summary judgment based upon the latest appellate court pronouncement in *Profitt v. Canez*, 118 Ariz. 235, 575 P.2d 1261 (App.1977), which held that in the absence of a dram shop law the bar owner is not liable in a case such as this.

Our position as an intermediate appellate court constrains us to affirm because of our Supreme Court's decisions in *Pratt v. Daly*,

55 Ariz. 535, 104 P.2d 147 (1940) and *Collier v. Stamatis*, 63 Ariz. 285, 162 P.2d 125 (1945). This does not mean, however, that we cannot criticize a rule that is patently unsupportable by either accepted fundamental legal principles or by logic and is contrary to present tort concepts of the State of Arizona. We wish to extend the criticism contained in the author's concurring opinion in *Pierce v. Lopez*, 16 Ariz.App. 54, 490 P.2d 1182 (1971).

Before stating the common law rule that is followed in Arizona and the reason for the rule, it would be well to remember the function of common law judges and the role of the common law. The main characteristic of the common law is its dynamism. It does not remain static. The common law is not a thing of chiseled marble to be left unchanged for centuries.

> "Inherent in the common law is a dynamic principle which allows it to grow and to tailor itself to meet changing needs within the doctrine of stare decisis, which, if correctly understood, was not static and did not forever prevent the courts from reversing themselves or from applying principles of common law to new situations as the need arose. If this were not so, we must succumb to a rule that a judge should let others 'long dead and unaware of the problems of the age in which he lives, do his thinking for him.' Mr. Justice Douglas, 'Stare Decisis' 49 Columbia Law Review 735, 736." *Bielski v. Schulze*, 16 Wis.2d 1, 114 N.W.2d 105, 110 (1962). (Footnote omitted)

Arizona has adopted the common law with certain exceptions by the enactment of A.R.S. Sec. 1–201, which states:

> "The common law only so far as it is consistent with and adapted to the natural and physical conditions of this state and the necessities of the people thereof, and not repugnant to or inconsistent with the constitution of the United States or the constitution or laws of this state, or established customs of the people of this state, is adopted and shall be the rule of decision in all courts of this state."

Although *Bristor v. Cheatham*, 75 Ariz. 227, 255 P.2d 173 (1953), said that we may not depart from the common law because we think it fallacious and anomalous, A.R.S. Sec. 1–201 still allows us great leeway in performing our functions as common law judges.

When a common law rule is seriously challenged it cannot be dismissed by simply citing past authority by rote. An analysis of the old rule must be undertaken to determine if it is still valid under present conditions and statutory and case law. This we shall do.

At common law, the person who furnishes or sells intoxicating liquor to another cannot be held liable for a third person's injuries that were caused by the intoxicated person, because the drinking of the liquor, not the act of furnishing it, is the proximate cause of the injury. *Pratt v. Daly*, supra; *Collier v. Stamatis*, supra. The rule is based on the obvious fact that one cannot be intoxicated by liquor furnished him if he does not drink it. *Pratt v. Daly*, supra.

How sound is this rule and is it repugnant to our present negligence law? The term "proximate cause" is defined in *Pacht v. Morris*, 107 Ariz. 392, 489 P.2d 29 (1971) as any cause that, in a natural and continuous sequence unbroken by any efficient intervening cause, produces injury, and without which the injury would not have occurred. Whether, by reason of an intervening act, there is a break in causation that will relieve a defendant from liability is dependent upon whether the intervening act is one that should have been reasonably anticipated by the defendant. *MacNeil v. Perkins*, 84 Ariz. 74, 324 P.2d 211 (1958). Ordinarily questions of proximate cause and intervening cause are left to the jury for its factual determination. *Nichols v. City of Phoenix*, 68 Ariz. 124, 202 P.2d 201 (1949). Furthermore, the Restatement (Second) of Torts Sec. 449 (1965) states:

> "If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether in-

nocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby."

This is substantially the same as Sec. 449 of the first Restatement which was quoted with approval in *Nichols.*

As was stated in *Vesely v. Sager*, 5 Cal.3d 153, 95 Cal.Rptr. 623, 486 P.2d 151 (1971):

"Insofar as proximate cause is concerned, we find no basis for a distinction founded solely on the fact that the consumption of an alcoholic beverage is a voluntary act of the consumer and is a link in the chain of causation from the furnishing of the beverage to the injury resulting from intoxication. Under the above principles of proximate cause, it is clear that the furnishing of an alcoholic beverage to an intoxicated person may be a proximate cause of injuries inflicted by that individual upon a third person. If such furnishing is a proximate cause, it is so because the consumption, resulting intoxication, and injury-producing conduct are foreseeable intervening causes, or at least the injury-producing conduct is one of the hazards which makes such furnishing negligent." 486 P.2d at 159.

Judge Prather's dissent in *Meade v. Freeman*, 93 Idaho 389, 462 P.2d 54 (1969), criticizes the common law rule:

"Some courts cling steadfastly to the myth that it is the drinking and not the sale that is the proximate cause of the ensuing injury and are wearing blinders when it comes to observing the ordinary course of human events. It is quite ordinary to observe that persons who commence drinking intoxicants pass through various stages from complete sobriety to incapacitating intoxication and unconsciousness. It is quite observable that the first small amounts of liquor do not affect the person's ability to control himself and his actions. When the person has imbibed sufficient liquor that the effects thereof are becoming obvious to the ordinary person, the imbiber is still able to control himself and his actions sufficiently to avoid injury to others. If the imbiber continues to drink intoxicants, however, his condition will worsen until he reaches the point that he can not control his thought or muscular processes. After the first signs of apparent and obvious intoxication have begun to show on a person who is drinking, it is within the knowledge and experience of nearly all people that such person should not indulge in any further use of intoxicants until his body has rid itself of that which he has already imbibed. When so viewed, I perceive no difference in regarding the sale of further intoxicants to one already drunk as a proximate cause of ensuing injuries and in those cases wherein the sale of firearms to minors or incompetents, the sale of explosives to minors or incompetents, the sale of dangerous drugs to those known to be addicted, or the manufacture and release upon the market of dangerously defective commodities are held to form a basis for liability. The underlying principle of all of these cases is that the seller is sending out into the public a thing of danger which a reasonably prudent person under like circumstances would apprehend would be likely to cause injury to someone else.

When most people walked and few had horses or carriages, or even in the days when the horse and buggy was a customary mode of travel, it may have been that the common law rule of non-liability arising from the sale of liquor to an intoxicated person was satisfactory. But the situation then and the problem in today's society of the imbiber going upon the public highways and operating a machine that requires quick response of mind and muscle and capable of producing mass death and destruction are vastly different." 462 P.2d at 64–65.

In addition to *Vesely v. Sager,* supra, other courts have held that the sale of alcoholic beverages may be a proximate cause of the injury to a third person and that liability may be imposed upon the vendor under common law doctrines. *Waynick v. Chicago's Last Department Store,* 269 F.2d 322 (7th Cir. 1959), cert. denied 362

U.S. 903, 80 S.Ct. 611, 4 L.Ed.2d 554 (1960); *Deeds v. United States*, 306 F.Supp. 348 (D.Mont.1969); *Prevatt v. McClennan*, 201 So.2d 780 (Fla.Dist.Ct.App.1967); *Colligan v. Cousar*, 38 Ill.App.2d 392, 187 N.E.2d 292 (1963); *Elder v. Fisher*, 247 Ind. 598, 217 N.E.2d 847 (1966); *Pike v. George*, 434 S.W.2d 626 (Ky.1968); *Adamian v. Three Sons, Inc.*, 353 Mass. 498, 233 N.E.2d 18 (1968); *Rappaport v. Nichols*, 31 N.J. 188, 156 A.2d 1 (1959); *Berkeley v. Park*, 47 Misc.2d 381, 262 N.Y.S.2d 290 (Sup.Ct.1965); *Jardine v. Upper Darby Lodge No. 1973, Inc.*, 413 Pa. 626, 198 A.2d 550 (1964); *Mitchell v. Ketner*, 54 Tenn.App. 656, 393 S.W.2d 755 (1964); and see *Vance v. United States*, 355 F.Supp. 756 (D.Alaska 1973); *Bernhard v. Harrah's Club*, 16 Cal.3d 313, 128 Cal.Rptr. 215, 546 P.2d 719 (1976), cert. denied, 429 U.S. 859, 97 S.Ct. 159, 50 L.Ed.2d 136; *Davis v. Shiappacossee*, 155 So.2d 365 (Fla.1963); *Lewis v. State*, 256 N.W.2d 181 (Iowa 1977); *Pence v. Ketchum*, 326 So.2d 831 (La.1976); *Trail v. Christian*, 298 Minn. 101, 213 N.W.2d 618 (1973); *Ramsey v. Anctil*, 106 N.H. 375, 211 A.2d 900 (1965); *Campbell v. Carpenter*, 279 Or. 237, 566 P.2d 893 (1977); Keenan, "Liquor Law Liability in California", 14 Santa Clara Law. 46 (1973); "Torts—The Common Law Negligence Liability of Commercial Purveyors of Alcohol: *Campbell v. Carpenter*", 57 Ore.L.Rev. 357 (1978).

It seems clear that the common law rule is an anachronism, unsuitable to our present society, and that its reasoning is repugnant to modern tort theories.

Once we disabuse ourselves of the concept that the furnishing of the liquor cannot be a proximate cause, we can also base a seller's liability on A.R.S. Sec. 4–244(14), which makes it unlawful for a licensee to sell or furnish spiritous liquor to an intoxicated person. Violation of this statute is a misdemeanor. A.R.S. Sec. 4–246. Violation of a statute created to protect a certain group is negligence per se. *Orlando v. Northcutt*, 103 Ariz. 298, 441 P.2d 58 (1968). In *Mendelsohn v. Superior Court*, 76 Ariz. 163, 261 P.2d 983 (1953), the court stated:

"The liquor laws of Arizona are plainly designed to protect the welfare, health, peace, temperance, and *safety* of all the citizens by providing for the strict regulation and control of the manufacture, sale, and distribution of alcoholic beverages." (Emphasis added) 76 Ariz. at 169, 261 P.2d at 988.

Can there be any doubt that the purpose in prohibiting the bar owner from selling liquor to a person who is already intoxicated is to prevent him from becoming even more intoxicated, so that he is not a greater risk when he leaves the bar? Other jurisdictions have no difficulty in concluding that statutes similar to A.R.S. Sec. 4–244(14) were enacted to protect the public, that their violation constitutes negligence per se on the part of the bar owner and that a bar owner can be held liable based upon such a statute. *Waynick v. Chicago's Last Department Store*, supra; *Vesely v. Sager*, supra; *Lewis v. State*, supra; *Pence v. Ketchum*, supra; *Adamian v. Three Sons, Inc.*, supra; *Berkeley v. Park*, supra; *Mason v. Roberts*, 33 Ohio St.2d 29, 294 N.E.2d 884 (1973); *Jardine v. Upper Darby Lodge No. 1973, Inc.*, supra.

We find the language in *Jardine* to be singularly appropriate:

"Since an intoxicated person is and can be an instrument of danger to others, especially if he is operating a motor vehicle, the Legislature of Pennsylvania declared by the Act of 1951, as already stated, that it shall be unlawful for any person to sell liquor to one already intoxicated. The first prime requisite to de-intoxicate one who has, because of alcohol, lost control over his reflexes, judgment and sense of responsibility to others is to stop pouring alcohol into him. This is a duty which everyone owes to society and to law entirely apart from any statute. The person who would put into the hands of an obviously demented individual a firearm with which he shot an innocent third person would be amenable in damages to that third person for unlawful negligence. An intoxicated person behind the wheel of an automobile can be as

dangerous as an insane person with a firearm. He is as much a hazard to the safety of the community as a stick of dynamite that must be de-fused in order to be rendered harmless. To serve an intoxicated person more liquor is to light the fuse." 198 A.2d at 553.

Courts which have refused to consider the sale of liquor to an intoxicated person in violation of the statute as the basis of a negligence action have done so either because of the history of their statute or the statutory scheme itself. The Nevada court refused to hold a violation of the statute to be negligence per se but its refusal was based upon the fact that its statutes did impose limited civil liability upon the bar owner for selling liquor to minors, but did not do so for selling it to persons who were intoxicated. *Hamm v. Carson City Nugget, Inc.*, 85 Nev. 99, 450 P.2d 358 (1969). In *Holmes v. Circo*, 196 Neb. 496, 244 N.W.2d 65 (1976), the court's refusal to find liability through the statutes was based in part upon a history of the Nebraska statutes governing the sale of alcohol and in particular upon the fact that Nebraska had dram shop liability in its statutes at one time but repealed it. See also *Meade v. Freeman*, supra, which rejected liability on the same basis.

Those cases that have refused to abrogate the common law rule have done so either by adhering to it without analyzing its rationale or by citing the need for legislative action. Those courts that claimed that the changing of the common law rule is a legislative function are *Carr v. Turner*, 238 Ark. 889, 385 S.W.2d 656 (1965); *Nelson v. Steffens*, 170 Conn. 356, 365 A.2d 1174 (1976); *Meade v. Freeman*, supra; *State v. Hatfield*, 197 Md. 249, 78 A.2d 754 (1951); *Holmes v. Circo*, supra; *Hamm v. Carson*, supra; *Marchiondo v. Roper*, 90 N.M. 367, 563 P.2d 1160 (1977); *Garcia v. Hargrove*, 46 Wis.2d 724, 176 N.W.2d 566 (1970) and *Parsons v. Jow*, 480 P.2d 396 (Wyo.1971). It is interesting to note in *Marchiondo v. Roper*, supra, that although the court felt the change in the rule required legislative action, it clearly warned if the legislature failed to act in the matter, it would.

We have examined the other courts' reasons for holding that abrogation of the common law rule is for the legislature. Some find that the legislature has already spoken by the repeal of the dram shop act. Some misconceive the role of common law judges. These courts mistakenly believe that balancing competing interests is the role of the legislature and not the courts. See *Holmes v. Circo*, supra. What else do courts do but balance competing interests? The law of torts is concerned with the allocation of losses arising out of human activities. Its purpose is to adjust these losses, affording compensation for injuries sustained by one person as a result of the conduct of another. W. Prosser, The Law of Torts Sec. 2, at 6 (4th ed. 1971). The development of the law of torts has been and is now peculiarly a function of the common law judge. In this respect, we start with the proposition that the law requires every man to act reasonably and not create undue risk for others by his conduct. If he fails to meet this standard and causes injury, he should then have to respond in damages, absent some strong contrary public policy.

Prosser says the following factors affect a decision of whether or not liability should be imposed: the moral aspect of defendant's conduct; historical development; convenience of administration; capacity to bear loss; and prevention and punishment. Prosser, Sec. 4.

If legal liability is to coincide with moral wrong, what can be said in favor of the barkeeper who serves intoxicants to someone who is already intoxicated when he knows or should have reason to know that upon leaving the bar that person will unleash an instrument of potential destruction? Such anti-social conduct cries out for legal liability.

The dram shop rule was promulgated by the courts in horse and buggy days. The attitude that the plaintiff's rights are limited to the remedies available at common law must yield when the rationale for the rule no longer applies.

The problems of administering a rule imposing liability is discussed in *Alsup v. Garvin-Wienke, Inc.*, 579 F.2d 461 (8th Cir. 1978) and *Holmes v. Circo*, supra. Both courts express the fear that liability might next be extended to social instances, as in the California case of *Coulter v. Superior Court of San Mateo County*, 21 Cal.3d 144, 145 Cal.Rptr. 534, 577 P.2d 669 (1978). However, we are not considering here the liability of a social host. Even if we were, what is wrong with making a person who furnishes intoxicants to one who is already visibly and obviously intoxicated liable if the latter gets into the driver's seat of an automobile and kills or maims another? If his act is a proximate cause of the injury, how can he say that he should not be held liable? It is a wrong for which a responsible judicial system should provide a remedy. Would it open up the floodgates of litigation because of the difficulty of proof? The court in *Holmes v. Circo*, supra, considered problems regarding proof:

> "The difficulties of recognizing intoxication and predicting conduct of an intoxicated patron without imposing some duty of inquiry are evident. Problems could also arise in the apportionment or sorting out of liability among the owners of various bars visited on 'bar hopping' excursions. The correct standard of care to be used also presents a problem, as does the determination of whether all acts of the patron, including intentional torts, should be included within the liability of the tavern owner or operator." 244 N.W.2d at 70.

We do not believe the problems envisioned by the Nebraska court are any different from those in other negligence cases. The plaintiff will have to prove by a preponderance of the evidence that the person in question was, at the time, obviously, actually and apparently intoxicated in order to prove by a preponderance of the evidence that the bartender knew, or should have known, such fact. Furthermore, to be successful upon such a cause of action, the plaintiff would have to prove by a preponderance of the evidence that serving the additional intoxicating liquor, after the subject person was already obviously, actually and apparently intoxicated, was a contributing proximate cause of the ensuing injuries. Such proof is not outside of the competence of our judicial system.

Another factor which should be weighed is the capacity to bear loss. This is not so much a matter of respective wealth, but of the capacity to absorb the loss or avoid it. The Arizona law already places a burden upon the barkeeper not to serve liquor to intoxicated persons. Imposition of civil liability would fulfill the statutory purpose in perhaps the most meaningful manner and it would not add to the burden already imposed by the statute.

The prophylactic effect is evident. The high percentage of fatalities and injuries caused by the drunk driver is well known. As was said in *Jardine v. Upper Darby Lodge No. 1973, Inc.*, supra, "To serve an intoxicated person more liquor is to light the fuse." What better way is there to prevent the bomb from going off than to make the bartender who served the intoxicated person more liquor respond in damages?

All the factors that Prosser lists as affecting tort liability point to the imposition of liability in a case such as we have here. Liability can and should be imposed either under common law principles of negligence or under the violation of a statute enacted to protect public safety. *Stone v. Arizona Highway Commission*, 93 Ariz. 384, 381 P.2d 107 (1963) is an example of common law judges in their finest hour. There the court abolished the common law doctrine of governmental immunity. The common law rule of no liability in this case was created by the courts. What has been created by the courts can be undone by the courts. Were we the Supreme Court of this state, we would abolish the anachronistic and illogical common law rule and subject the bar owner to liability.

Affirmed.

HATHAWAY, J., concurs.

FERNANDEZ, Judge, specially concurring.

I concur in the results and feel that the principles of *Profitt v. Canez*, 118 Ariz. 235, 575 P.2d 1261 (App.1977) should be followed.

NOTE: Chief Judge JAMES L. RICHMOND having requested that he be relieved from consideration of this matter, Judge LLOYD FERNANDEZ was called to sit in his stead and participate in the determination of this decision.