148 Cal.App.2d 656 (1957)
JOHN FORREST KINGEN, Respondent,
v.
FRANK WEYANT et al., Defendants; GUST PALEOLOGOS et al., Appellants.
Civ. No. 5352. 
California Court of Appeals. Fourth Dist. 
Feb. 25, 1957.
 Edward A. Friend for Appellants.
 Simon Marootian for Respondent.
 MUSSELL, J.
 This is an action for damages for personal injuries sustained by plaintiff when his head struck the tile floor in a tavern and restaurant owned and operated by appellants Gust and Nick Paleologos in Fresno County.
 The complaint contains three causes of action. The first cause of action is against the defendant Frank Weyant for damages for unlawful assault and battery. In the second cause of action it is alleged that the defendants Paleologos and their bartender carelessly and negligently served intoxicating beverages to defendant Weyant, knowing that he had consumed intoxicating beverages to excess and knowing that he was a person of vicious, violent, quarrelsome and disorderly propensities; that they negligently failed to control his conduct and allowed him to assault and strike plaintiff with his hands and fists, causing him to fall and strike his head on the floor. It is alleged in the third cause of action that the appellants and their agent, the bartender, negligently served intoxicating beverages to defendant Weyant, negligently failed to control him in his disorderly conduct, having the ability to do so, and negligently allowed him to assault the plaintiff.
 A jury trial resulted in a verdict for all defendants and plaintiff moved for a new trial. The court granted the motion on all the grounds stated in the notice of motion and as against all defendants. Defendants Gust and Nick Paleologos appeal from the order granting a new trial as to them.
 On November 6, 1953, the premises involved herein and known as the "Fairground Inn" were owned and operated by the appellants. At about 5 p. m. on that date, defendant Weyant, an equipment operator for the county of Fresno, entered the building and he and his wife, who came in a few minutes later, sat at the bar, drinking, until about 9 p. m. Weyant drank two bottles of beer before his wife arrived and five or six bourbon and soda highballs thereafter. At about 10 minutes to 9 o'clock, one Jim Kepley and his wife came in with another couple and occupied one of the booths. Kepley came over to the bar and got four bottles of beer *658 to carry back to the booth, and as he passed Weyant and his wife, he said "Hello" to her. When Kepley, who was not known to Weyant, had returned to his booth, Weyant asked his wife what his name was and she stated that his name was Jim, that he used to live across the alley from her, and that she did not know his last name. Weyant testified that he then said, "It is funny that you should call him Jim and you don't recall his last name"; that she said, "Well, if you want to know what his last name is, why go over and ask him"; that he then walked over to the young man and said, "Pardon me, sir, my wife don't seem to recall your last name. What is your last name?"; that Kepley said, "It is none of your damn business"; that he (Weyant) then said, "Would you like to take a walk outside"; that Kepley's wife would not let him go outside and at that time a Mr. Holcroft came over to the booth and in a "gentlemanly manner settled the situation very nicely"; that he (Weyant) intended to take Kepley out and beat him up; that while he was at the booth the bartender said, "Boys, break it up"; that he (Weyant) then walked back to his wife and started out of the inn; that he took his wife by the arm and off the bar stool and they started toward the door; that "somebody took me by the shoulder when I got opposite the shuffleboard and I just brushed back my arm that way, and the back of my hand struck somebody alongside the jaw"; that he did not see who it was and that he was "just getting unencumbered to get out of the door"; that as soon as he got out of the door, his wife told him he had better come on back "Forrest is on the floor"; that he went back and sat on a bar stool and saw the plaintiff, Forrest Kingen, stretched out flat on the floor and that the first time he had seen him was as he went out; and that he had seen Kingen playing at the shuffleboard during the conversation with Kepley.
 Plaintiff Kingen testified that he had known Weyant for approximately two years; that he had been going to the Fairground Inn for approximately that same length of time; that he went to the inn on November 6, 1953, at about 2 p.m. and was playing shuffleboard when Weyant came in; that he continued playing shuffleboard until approximately 9 p. m.; that he drank several beers, but was sober; that he saw Weyant and his wife sitting at the bar but did not see what they did; that at about 9 p.m., while he was playing shuffleboard, someone fell against him and he remembered trying to push them up and that "the only thing I remember is 'take it easy, *659 Frank,' and turned around, and that is when my lights went out"; and that he did not remember being struck by Frank or falling to the floor.
 Jim Kepley testified that he and his companions were sitting at a booth in the inn; that he had occasion to go to the bar and order some drinks; that he saw Mrs. Weyant, whom he had known for several years, sitting at the bar; that he said "Hello" to her and went back to his booth; that Weyant came over to the booth and "asked me what my name was, what I was doing, where I worked, and wanted me to go outside with him"; that he told Weyant that it wasn't any of his business; that Weyant then went to the bar and came back again, asking the same questions and tried to pull him out of the booth; that Mr. Holcroft, one of the shuffleboard players, then came over to the booth and after further conversation with Weyant, his wife persuaded him to go back to the bar; that Weyant was pulling his wife by the arm, taking her outside, and when they were about at the door, Kingen tried to stop him; that Weyant hit Kingen with his right hand and Kingen fell to the floor and hit his head.
 Ernest Neil Gonzales, the bartender, testified that he had worked at the inn for about four years; that he was on duty on the night of November 6, 1953; that he was instructed by the appellants to keep order in the premises and to stop any disturbance, if possible; that plaintiff was playing shuffleboard intermittently from 6 to 9 p. m. and had had several drinks; that Weyant and his wife were sitting at the bar and when someone spoke to her, Weyant went over to the booth and there was a little argument; that "I told them to break it up, take it easy, and that seemed to settle it"; that there was no more commotion and that the argument lasted less than one minute; that Weyant and his wife came back to the bar and Weyant pulled his wife off the stool and started for the door; that when they got almost to the door, plaintiff came over and laid his hand on Weyant and "I don't know whether Frank hit him or just shoved him, or what it was, but anyway, Forrest fell down. It was all instantaneous, like that. I couldn't say whether he either hit him or pushed him. I don't know"; that when plaintiff came over to defendant Weyant, he said something like "Don't do that" and Weyant said "This is my own family affair and stay out of it"; that during all the time he had worked at the inn he had never seen Weyant get into any kind of a fight or argument or trouble or had never seen him in an intoxicated condition. *660
 Other witnesses who were present when plaintiff received his injuries testified as to the argument with Kepley and the ensuing events. However, it is apparent from all the testimony that the argument at the Kepley booth was of short duration and that plaintiff received his injuries when Weyant was taking his wife from the premises.
 Appellants argue that the trial court abused its discretion in granting a new trial as to them and that the evidence would not support a judgment against them. We are in accord with these contentions. [1] The granting of a new trial rests largely in the discretion of the trial judge and an order granting a new trial may be reversed only when there is no substantial conflict on material issues, and the evidence is insufficient as a matter of law to support a contrary verdict. (Brinkerhoff v. Ferguson, 107 Cal.App.2d 175, 176 [236 P.2d 588].) However, if, as in the present case, the evidence as a whole is insufficient to support a verdict in favor of plaintiff as against these appellants, the order granting a new trial cannot be sustained. (Mazzotta v. Los Angeles Ry. Corp., 25 Cal.2d 165, 168 [153 P.2d 338].) [2] And, as is said in Martin v. Smith, 103 Cal.App.2d 894, 897 [230 P.2d 679]: "... (w)hen it appears that there is no substantial evidence to support a judgment in favor of a party whose motion for new trial has been granted, an appellate court may and should reverse the order of the trial court granting a new trial."
 The action against appellants herein is based upon allegations that they served intoxicating liquor to Weyant, knowing that he had been consuming such beverages to excess and knowing that he was a person of vicious, quarrelsome and disorderly propensities, and negligently failed to control his conduct and allowed him to strike the plaintiff.
 The general rule of the common law as to tort liability arising out of the sale of intoxicating beverages is stated in Cole v. Rush, 45 Cal.2d 345, 348 [289 P.2d 450], quoting from 30 American Jurisprudence 573, section 607, as follows:
 " 'The common law gives no remedy for injury or death following the mere sale of liquor to the ordinary man, either on the theory that it is a direct wrong or on the ground that it is negligence, which imposes a legal liability on the seller for damages resulting from the intoxication.' " (Citations.)
 The evidence herein does not show that Weyant was known to appellants to be vicious, violent or quarrelsome. Weyant had never had any argument or trouble with the plaintiff *661 prior to the occasion here involved. He had been a regular customer at the Fairground Inn for several years and went there approximately 200 times a year, often taking his meals there. While he sometimes spoke in a loud voice, he had had no argument in the inn except on one occasion in 1952, and that was with his wife, during which he took her out of the back door of the inn. Plaintiff had known Weyant for approximately two years and had never seen him fight with or swing at anyone. Appellant Gust Paleologos had known Weyant for several years prior to November 6, 1953, had never seen him in an intoxicated condition, and had never seen him fight with anyone nor quarrel with anyone except his wife on one occasion in 1952. None of the many witnesses who testified at the trial had ever seen Weyant fight with or strike anyone.
 [3] The proprietor of an inn is under a duty to protect his patrons from injury, annoyance and mistreatment but he is not an insurer of their safety (27 Cal.Jur.2d, Innkeepers, 25), his obligation in this respect being limited to the exercise of reasonable care, and he is liable only when he is negligent in receiving or harboring guests of known violent or vicious propensities. (27 Cal.Jur.2d, Innkeepers, 27, p. 278; 28 Am.Jur., Innkeepers, 54, p. 577.) In Rahmel v. Lehndorff, 142 Cal. 681, 685 [76 P. 659, 100 Am.St.Rep. 154, 65 L.R.A. 88], it is said:
 "An innkeeper is no doubt guilty of negligence if he admits to his hotel or permits to remain there, whether as guest or servant, a person of known violent and disorderly propensities who will probably assault or otherwise maltreat his guests, and for the consequence of such negligence he may be liable in damages. But the plain ground of his liability in such case would be his negligence in harboring persons dangerous to the peace and comfort of those for whose comfort he is bound to provide."
 [4] The evidence herein, considered in the light of these authorities, is insufficient to support a judgment against these appellants based on negligence. Weyant was not known to them as a vicious or dangerous person. He had never been known to strike a guest in the inn although he had been a regular patron thereof for several years. The bartender took prompt and effective action in terminating the argument between Weyant and Kepley and his admonition to "break it up" was heeded by Weyant. There was then no reasonable probability that Weyant would assault anyone, for he immediately started to leave the inn. The bartender could not *662 reasonably be required to anticipate the action of the plaintiff in attempting to restrain Weyant as he was leaving the establishment and it cannot be said that the acts or conduct of appellants were the proximate cause of plaintiff's injuries.
 There is no notice of appeal on behalf of the defendant Weyant in the record before us, or a request to prepare the record on appeal. We therefore do not pass upon the order granting a new trial as to the defendant Weyant.
 The order granting a new trial is reversed as to the appellants Gust Paleologos and Nick Paleologos.
 Barnard, P. J., and Griffin, J., concurred.