448 P.2d 388

Issie BERNE, Appellant,

v.

**GREYHOUND PARKS OF ARIZONA, INC.,**
a corporation, Appellee.

**No. 9053–PR.**

Supreme Court of Arizona,
In Banc.

Dec. 13, 1968.

Richard L. Keefe, Tucson, for appellant.

Chandler, Tullar, Udall & Richmond, Tucson, for appellee.

STRUCKMEYER, Justice.

This case comes before this court on petition to review the decision of the Court of Appeals, Division Two, 5 Ariz.App. 483, 428 P.2d 147, reversing a judgment of the superior court entered upon a motion for directed verdict in a negligence suit. Opinion of the Court of Appeals, Division Two, vacated and judgment of the trial court affirmed.

The facts which give rise to this appeal are these: On October 25, 1963, Issie Berne, plaintiff herein, was a business invitee on the premises of defendant, Greyhound Parks of Arizona, Inc., a corporation. Defendant operated a dog racing track and had been in possession and control of the premises since 1958. Sometime, approximately between the second and third events of the evening, plaintiff was proceeding away from the cashiers' booths on the mezzanine floor, when he slipped and fell. The immediate cause of the fall was a small pool or puddle of liquid located on the floor of the mezzanine.

The puddle resulted from a liquid being spilled in the grandstand which dripped through the floor and undercarriage of the grandstand onto the mezzanine floor below. Plaintiff estimated that the size of the pool of liquid was approximately 6 to 9 inches in diameter. Following the fall, plaintiff and an employee of defendant saw some liquid still dripping from the grandstand.

Plaintiff brought this suit for damages on the ground that defendant was negligent in failing to provide a safe place for the plaintiff to transact his business asserting that the condition of the premises was such that the plaintiff was exposed to an unreasonable risk of injury. The cause came to trial before a jury and after plaintiff had rested, the trial court granted the defendant's motion for directed verdict. Plaintiff asserts that there was sufficient evidence to show that the floor of the

grandstand was in such a condition that it permitted liquids spilled on it to drip through, thereby "causing the precise dangerous condition to exist which gave rise to said invitee's injury."

■ It is, of course, the universal rule that a plaintiff in a negligence suit must make out a prima facie case of actionable negligence by showing the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and injury proximately caused by such breach, and:

> The burden of proving negligence rests upon the plaintiff, and it is not incumbent upon the defendant to prove an absence thereof. Pickwick Stages Corp. v. Messinger, 44 Ariz. 174, 36 P.2d 168; Salt River Valley Water Users' Assn. v. Blake, 53 Ariz. 498, 90 P.2d 1004.

Moreover, it is not sufficient that the facts are such that negligence might have existed, but it must affirmatively appear that it did. McGuire v. Valley National Bank of Phoenix, 94 Ariz. 50, 381 P.2d 588; Butane Corp. v. Kirby, 66 Ariz. 272, 282, 187 P.2d 325, 332; Seiler v. Whiting, 52 Ariz. 542, 84 P.2d 452.

■ There is no contention or evidence that defendant, its agents or employees spilled the liquid. Lacking this element the plaintiff must establish that the proprietor of premises had actual notice of the puddle, or that it had been in existence for a sufficient length of time prior to the injury for the proprietor, in the exercise of reasonable care, to find and correct it or take remedial action. McGuire v. Valley National Bank of Phoenix, supra, 94 Ariz. 54, 381 P.2d 588.

There is no evidence that the liquid had been present on the floor a sufficient length of time for defendant to find and correct it in the exercise of reasonable care. To the contrary, the evidence is that the liquid was still dripping from above after the accident. Plaintiff, recognizing the foregoing, urges that in the past there have been puddles on the mezzanine floor which had dripped from the grandstand above and

that the cracks created a "defective condition" of the premises out of which the plaintiff's injuries occurred.

A review of the evidence shows the following testimony relating to spilled liquids:

Louis L. Pariseau had been employed at Greyhound Parks in the capacity as a mutuel ticket seller for 4½ years, working in the area where the accident occurred. He testified:

"Q. Now, counsel asked you if prior to 1963 whether you had seen drippings from the grandstand to the mezzanine floor?

"A. Yes.

"Q. Your answer was yes?

"A. I would say yes, yes.

"Q. Approximately how many times?

"A. I would say in the stand of my total years of work there, it would be two or three times at the outside that I ever seen it, in toto."

Leslie A. Larson, a former employee of defendant, testified to this effect:

"Q. Have you seen any liquids at any time coming through the grandstand area and dripping on the mezzanine floor?

"A. Yes, I have occasionally."

He also testified:

"Well, I—well, I have occasionally seen things spill or drip through there and also on occasions if it would be a heavy rain or something, probably a portion of —."

And also:

"I am sure there have been things spilled, in other words, that would drip down through there for a period of time prior to that."

William Edward Irving, Chief Security Officer for the defendant, one of whose duties it was to see that liquids spilled on the premises were cleaned up, testified:

"A. Well, to my knowledge and the best that I can remember, I only remember one instance of actually seeing liquids come through that crack. But they are always being spilled up there, yes. Coffee, beer and Coca-Cola.

"Q. Always being spilled in the grandstand?

"A. Sure, all over.

"Q. It drips down from the grandstand to the mezzanine floor, doesn't it?

"A. It could very easily, but when it is, it is cleaned up immediately. But I don't remember of any but one time seeing it personally drip.

"Q. Have you had many reports of it, of dripping or liquids being spilled along the mezzanine floor from the grandstand?

"A. No.

\* \* \* \* \* \*

"Q. You had other falls in the mezzanine area or complaints of falls by persons who have alleged they slipped in some liquid substance that came down from the grandstand; have you not?

"A. Well, I have had people fall up there, yes, but I have had·no complaints of falling on the liquid itself. Not that I remember. Possibly.

"Q. You say it is possible, very possible?

"A. It's possible, but I don't remember of any being reported to me personally.

\* \* \* \* \* \*

"Q. Have you, Officer, ever seen drippings yourself from the grandstand to the floor?

"A. Only one time that I can remember.

"Q. Will you explain that to us.

"A. Yes. Some fellows had a bottle of whiskey upstairs and they reported to us and we went up and knocked the bottle over. When we came down, there was a puddle about the size of a half a dollar dripped from that whiskey bottle down there. That is the only time I remember specifically of seeing anything fall."

■■ If we assume that the foregoing testimony is sufficient to establish notice or knowledge of a defective condition in the grandstand floor, still we do not think it can be classified as such a dangerous

condition sufficient to support a cause of action in negligence under the facts of this case. True, plaintiff was a business invitee and Greyhound Parks was under an affirmative duty to make the premises reasonably safe for his use. However, the proprietor of a business premises is not an insurer of the safety of invitees and is not required at his peril to keep the premises absolutely safe. Borrow v. El Dorado Lodge, 75 Ariz. 139, 252 P.2d 791; Busy Bee Buffett v. Ferrell, 82 Ariz. 192, 310 P.2d 817. A proprietor's duty is to exercise reasonable care for an invitee's protection. Prosser, Law of Torts, Third Ed., Chapter 11, p. 402. The standard of care to be exercised does not impose liability for conditions from which an unreasonable risk of harm is not to be anticipated. § 343 Restatement of Torts 2nd.

The evidence presented to the trial court, at its best, establishes that some liquids which were spilled on the grandstand floor had dripped through cracks to the mezzanine floor at wide and irregular intervals. It did not establish that any puddles resulted other than one "about the size of a half dollar." There was no evidence that others had fallen or that there had been complaints of slips occurring from dripping liquids. Since people can and daily do sustain injuries from almost all conceivable conditions under a multitude of varying circumstances, and since the possessor of the premises is not an insurer of the safety of invitees, the line between liability and non-liability must be drawn at some point.

Liability cannot be determined from hindsight. As has been said, hindsight is 20-20 vision. From hindsight one could always postulate how an accident might have been prevented. Here, if there had been no cracks, presumably there would have been no accident. But this does not permit of the conclusion that the cracks in defendant's grandstand floor were such a condition that they involved an unreasonable risk of harm to others.

The plaintiff rests his appeal on the argument that a possessor of premises is liable to invitees injured as a proximate result of defective conditions in premises. Defective conditions are not necessarily dangerous conditions and we do not so equate them. The test of a defective condition as a dangerous condition is whether there has thereby been created an unreasonable risk of harm. In this the evidence does not rise to the magnitude necessary to support a judgment for damages.

Judgment affirmed.

McFARLAND, C. J., and BERNSTEIN and LOCKWOOD, JJ., concur.

UDALL, V. C. J., did not participate in the determination of this case.