490 P.2d 1182

**Violet PIERCE and Ralph Pierce, wife and husband, and Silas C. Valentine, dba Valentine's Bar, Appellants,**

v.

**Genaro LOPEZ, Appellee.**

**No. 2 CA–CIV 956.**

Court of Appeals of Arizona, Division 2.

Nov. 24, 1971.

Rehearing Denied Dec. 23, 1971.

Review Denied Jan. 18, 1972.

Johnson & Tucker, P. A. by Kenneth L. Tucker, Phoenix, for appellants.

William T. Healy, P. C. by William T. Healy, Tucson, for appellee.

HATHAWAY, Judge.

Plaintiff brought suit in superior court against one Robert Bowan and appellants Pierce and Valentine for injuries sustained from a blow to the head by a pool cue wielded by Bowan. The incident occurred

on February 14, 1969, while plaintiff was patronizing Valentine's Bar in Dudleyville, Arizona owned by defendant Valentine where defendant Pierce was tending bar. On trial the jury returned a $25,000 verdict in favor of plaintiff against all defendants. Appellants Pierce and Valentine appeal from the judgment and from the trial court's order denying their motion for judgment notwithstanding the verdict or in the alternative a new trial. Defendant Bowan is not a party to the appeal. Appellants ask this court to re-examine the sufficiency of the evidence contending there is no showing they breached a legal duty owed to the plaintiff. They further claim plaintiff's counsel argued matters not in evidence prejudicing their case and requiring a new trial. Plaintiff, in response maintains that appellants' motion for directed verdict was a motion to "dismiss," not timely, and not renewed at the close of all the evidence pursuant to Ariz.R.Civ.P. 50(b), as amended, 16 A.R.S.

During examination of plaintiff's final witness a discussion was held in chambers. At that time appellants' counsel moved for directed verdict. Although first referring to the motion as one for "dismissal" the transcript reveals in the same paragraph counsel's statement: "And we move for a directed verdict on that ground." After further discussion regarding the motion the court commented:

> "Let me say this: I am very tempted to grant the motion. I think possibly it should be granted, but I will reserve a ruling on it at this time. Let's go ahead and get the testimony completed."

We believe that at this point the record clearly shows a motion for directed verdict was made. The court was fully aware of the nature of the motion and reserved ruling thereon.

Examination of plaintiff's final witness was completed and plaintiff rested. All counsel then approached the bench to make a record. Counsel for defendant Bowan moved to dismiss which was denied. The following exchange then took place between appellants' counsel and the court:

> "MR. TUCKER: The record is clear though, my motion has been made as if made now. If it isn't I can make it later with the same force and effect.
>
> THE COURT: Yes."

From the portions of the record we have set forth above there is no doubt that appellants made a sufficient motion for directed verdict at the conclusion of plaintiff's evidence.

Following the latter exchange above, counsel for defendant Bowan called three witnesses. The first witness had not testified before. Her testimony was substantially that she "wasn't paying attention to anybody," that she "was busy on the telephone at the time when all this happened," and "didn't get a chance to see nothing" or "hear anything." The other two witnesses were defendant Bowan and his wife both of whom had previously testified.

Counsel for appellants proceeded with no evidence on their behalf, albeit he did cross-examine. Appellants did not renew their motion for directed verdict at the conclusion of the evidence offered by defendant Bowan.

Ariz.R.Civ.P. 50(b), as amended provides in part:

> "Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion."

The general rule has emerged from the language of Rule 50(b) that a verdict cannot be granted to a party who made a motion for a directed verdict at the close of the evidence offered by his opponent and then introduced evidence himself without renewing the motion for directed verdict at the close of all the evidence. By failing to renew the motion he is deemed to have waived the objection to the sufficiency of the evidence. O'Malley v. Cover, 221 F.2d

156 (8th Cir. 1955); Rodriguez v. Williams, 107 Ariz. 458, 489 P.2d 268 (1971); LaBonne v. First Nat. Bank of Arizona, 75 Ariz. 184, 254 P.2d 435 (1953); Glowacki v. A. J. Bayless Markets, 76 Ariz. 295, 263 P.2d 799 (1953); Loya v. Fong, 1 Ariz.App. 482, 404 P.2d 826 (1965); Annot., 69 A.L.R.2d 449, 482 (1960); 5A J. Moore, Federal Practice ¶ 50.05[1], at 2341 (2d ed. 1971); 46 Am.Jur.2d Judgments § 142 (1969); 2B W. Barron & A. Holtzoff, Federal Practice and Procedure § 1074, at 372 (C. Wright ed. 1961). Appellants concede the correctness of the rule stated but disclaim its applicability since they themselves introduced no evidence [1] and the evidence introduced after their motion pertained to an alleged intentional tort committed by defendant Bowan, not bearing on the issue of appellants' alleged negligence. Thus, they maintain their motion for directed verdict was properly made at the close of all the evidence "produced against them" by their opponents and that a renewal of their motion at the close of Bowan's defense was unnecessary. If this additional testimony had nothing to do with the questions raised by appellants' motion, then we would agree that as a practical matter, requiring them to renew their motion at the end of such testimony would seem to be an unnecessary technicality and not in keeping with the spirit of the rules. United States v. 353 Cases Mountain Valley Mineral Water, 247 F.2d 473 (8th Cir. 1957); Ariz.R.Civ.P. 1. We have examined the record, however, and cannot unqualifiedly state that none of the testimony offered in defense of Bowan went to the defense of appellants Valentine and Pierce.

■ We next consider the effect of the trial court's express reservation of ruling upon the motion for directed verdict made at the conclusion of plaintiff's case. Plaintiff relies on 6551 Collins Avenue Corp. v. Millen, 104 So.2d 337 (Fla.1958) in contending appellants have waived their right for post-trial judgment. There the defendant moved for directed verdict at the conclusions of plaintiff's case. The trial court reserved ruling and defendant thereupon put on its case. The Florida Supreme Court precluded review of the sufficiency of the evidence as the record did not indicate that the trial judge expressly reserved ruling until the close of all the evidence or after the verdict. Appellants again reply that in the instant case they did not introduce evidence and therefore are not within the Florida court's holding. We see some merit in both contentions but find neither to be controlling. The United States Court of Appeals, First Circuit, has provided useful guidelines in this area in a trilogy of cases.[2] Considering contentions similar to those of appellants in the instant case it held that there was no waiver of the right to test the sufficiency of the evidence. Bayamon Thom McAn, Inc. v. Miranda, 409 F.2d 968 (1st Cir. 1969); Beaumont v. Morgan, 427 F.2d 667 (1st Cir. 1970), cert den. 400 U.S. 882, 91 S.Ct. 120, 27 L.Ed.2d 121 (1970); contra, Gillentine v. McKeand, 426 F.2d 717 (1st Cir. 1970). We note that in those cases, however, the court not only relied upon the fact that the evidence following the motion at the conclusion of the plaintiff's case was inconsequential or pertained to other issues, but that the trial judge may have reasonably led counsel to believe that a later motion at the close of all the evidence was unnecessary. We have closely examined the record in this case and do not find that appellants' counsel was in any manner misled by the court. Thus, we hold that the appellants having made no motion for directed verdict at the close of all the evidence and there being no excuse for not having made such motion, are precluded from now by motion for judgment n. o. v., urging that a directed verdict be granted in

---

1. Appellants did elicit evidence, however, by cross-examination. Such evidence has no less effect than evidence adduced on direct examination.

2. For a discussion of distinctions between the right to review the sufficiency of evidence in state and federal courts see, Ruth v. Sorensen, 104 So.2d 10 (Fla. 1958).

their favor on the ground of insufficient evidence.

A motion for new trial, however, is procedurally unlike the motion for judgment n. o. v. in that no prior foundational motion is required. See Ariz.R.Civ.P. 59. Our rules do not require such a prerequisite nor is there a valid reason for it as presenting the question of sufficiency of evidence on motion for new trial adequately affords the trial court the opportunity to rule before appeal is filed. Singleton v. Valianos, 84 Ariz. 51, 323 P.2d 697 (1958). See also, Smith v. Moroney, 79 Ariz. 35, 282 P.2d 470 (1955). The grant or denial of the motion for new trial is within the sound discretion of the trial court and we will not upset its ruling absent a clear showing of abuse of that discretion. Rodriguez v. Williams, supra; Heaton v. Waters, 8 Ariz.App. 256, 445 P.2d 458 (1968); Verdugo v. Po Shing Gee, 4 Ariz.App. 113, 417 P.2d 747 (1966); Smith v. Moroney, supra. We note, however, that the appellate courts are generally more reluctant to reverse orders granting new trials than those denying new trials. Sanchez v. Stremel, 95 Ariz. 392, 391 P.2d 557 (1964); City of Mesa v. Bradshaw, 11 Ariz.App. 171, 462 P.2d 864 (1969). With these principles in mind we examine the applicable law and the facts of the instant case to determine whether the trial court abused its discretion in failing to grant a new trial.

■ If plaintiff is to prevail on his claim of actionable negligence he must prove that a duty existed which the appellants owed to him and that a breach of that duty proximately caused his injury. Berne v. Greyhound Parks of Arizona, Inc., 104 Ariz. 38, 448 P.2d 388 (1968); Morris v. Ortiz, 103 Ariz. 119, 437 P.2d 652 (1968).

No prior Arizona cases set forth the duty owed by a tavern owner or operator[3] to protect his patrons from injuries at the hands of other patrons while on his premises.[4] Historically the liability of a tavern owner for such an injury has been based on two theories—first, liability predicated on the sale or furnishing of the intoxicant and second, liability based on improper control, care or supervision of the premises. See Annot., 70 A.L.R.2d 628, 632 (1960).

■ Ordinarily at common law no action for damages may be maintained against the vendor of intoxicating liquor by one who sustains personal injuries by reason of the conduct of an intoxicated person unless there is an applicable "dramshop" law. Kingen v. Weyant, 148 Cal.App.2d 656, 307 P.2d 369 (1957); Thomas v. Bruza, 151 Cal. App.2d 150, 311 P.2d 128 (1957), Annot., 70 A.L.R.2d 628, §§ 1[b], 2 (1960). Arizona has neither a "dramshop" law nor a civil damage act imposing similar liability. Legislation which is now Ariz.Rev.Stat. Ann. § 4–244, as amended, has been held to be for the purpose of regulating the business of selling intoxicants and not to enlarge civil remedies. Collier v. Stamatis, 63 Ariz. 285, 162 P.2d 125 (1945); Vallentine v. Azar, 8 Ariz.App. 247, 445 P.2d 449 (1968). Thus, it seems clear under existing law, that in Arizona civil liability cannot be founded solely upon the sale of liquor to an intoxicated person.

■ We have examined the cases and authorities considering the common law duty of a proprietor of a tavern or similar place and find that the following instruction requested by plaintiff and given by the trial court fairly represents the majority view:

"You are instructed that one who operates a bar where the public is invited while not an insurer of the safety of his patrons, owes the duty to his patrons to exercise reasonable care and vigilance to protect them from reasonably foreseeable injury, mistreatment or annoyance at the hands of other patrons.

---

3. It is clear that the duty of the proprietor or operator extends to his duly authorized employee charged with the sole care and control of the premises at the time of the incident.

4. For a good discussion of the problem as it relates to Arizona, however, see 3 Ariz.L.Rev. 98 (1961).

In particular, the possessor must exercise the power of control or expulsion which his occupation of the premises gives him over the conduct of any person who may be present, to prevent injury, mistreatment or annoyance to the patron at said person's hand. He must act as a reasonable man to prevent harm from the negligence of persons who have entered the premises or even from intentional acts on the part of said persons. He is required to take action only when he has reason to believe, from what he has observed or from past experience, that the conduct of the other person will be dangerous to the visitor. The test of whether the duty of reasonable care is discharged is the probability or possibility of injury to the Plaintiff. Whether the person in charge of the premises, in the exercise of ordinary care, should have observed the conduct of the offender, realized that it was likely to result in injury to an invitee, and stopped it, are questions of fact to be determined by you."

See Bartosh v. Banning, 251 Cal.App.2d 378, 59 Cal.Rptr. 382 (1967); Waldron v. Hammond, 71 Wash.2d 361, 428 P.2d 589 (1967).

With the duty established, we turn to the record to determine whether plaintiff's evidence was sufficient to uphold the judgment and denial of appellants' motion. It is axiomatic that in reviewing the denial of a motion for new trial the evidence must be considered in the light most favorable to the party who prevailed below. Hibbitts v. Walter Jacoby & Sons, 9 Ariz.App. 486, 453 P.2d 997 (1969).

The following facts can be drawn from the evidence surrounding the incident at Valentine's Tavern. Plaintiff was standing at the bar talking to friends. Defendant Bowan, who had been playing pool, approached the bar and in so doing spilled beer on the arm and back of plaintiff. Bowan set his glass on the bar and attempted to wipe off the beer and apologize.

Bowan then turned to talk to a friend at the bar who had been standing near the plaintiff when plaintiff stated words to the effect: "You owe me more than an apology." Bowan and his wife testified that plaintiff laid his hand on Bowan's shoulder as if to turn him around when he spoke. Bowan replied: "Do you want to make something of it." Bowan then stepped away from the bar and plaintiff turned toward the bar to continue his former conversation. Bowan obtained a pool cue, took one or two steps forward swinging in a "fluid motion" and struck plaintiff on the left temple. One witness, Butler, standing next to plaintiff, saw the beer spilled but did not hear the words exchanged. Appellant Pierce, standing behind the bar, eight to ten feet away, did not see the beer spilled but heard the words exchanged.

Although Mrs. Pierce had known Bowan for some time there is no evidence that she knew prior to the day of the incident that he had a bellicose nature. If she is to be charged with the knowledge of Bowan's propensity for violence and for failing to intervene to protect a patron such knowledge and opportunity to act must appear in the record. The record indicates she had knowledge that Bowan had been drinking earlier and she served him five or six beers. It is reasonable to assume she knew him to be intoxicated. He was not, however, staggering or having any unusual difficulty in talking, in completing his pool games, or other normal activity. Further, the testimony was unanimous that Bowan had shown no indication of hostility, aggressiveness or violence while in the tavern preceding delivery of the blow and seemed to be in a good mood.

The longest period of time elapsing between the spilling of the beer and the blow was estimated at thirty seconds by Butler. Mrs. Pierce estimated the time as about two seconds; Bowan as between ten and twenty seconds; and plaintiff as between seven and nine seconds. The words were loud enough to be heard by Mrs. Pierce but, as

we have mentioned, they were not heard by Butler standing next to plaintiff. There is no evidence that the words spoken were unusually abusive or accompanied by profanity or physical actions expressing a high state of emotion. All witnesses, including plaintiff, with the single exception of Mrs. Bowan, thought the matter to be at an end when Bowan turned to leave immediately prior to the blow. Plaintiff himself admitted he returned to his former conversation because from what he observed there was no indication Bowan would carry the matter further. Mrs. Bowan, alone, sensed impending trouble when plaintiff put his hand on Bowan's shoulder, although she was sufficiently surprised when the blow was struck to utter a scream. Further she did not indicate she anticipated Bowan striking plaintiff with the pool cue.

We believe there is no showing of negligence on the record and that the trial court abused its discretion in denying appellants' motion for a new trial. A bar keeper is not an insurer of the safety of his patrons and is not required at his peril to keep the premises absolutely safe. Waldron v. Hammond, supra; De Hart v. Travelers Ins. Co., 10 So.2d 597 (La.App.1942); Peck v. Gerber, 154 Or. 126, 59 P.2d 675 (1936). See also Berne v. Greyhound Parks of Arizona, Inc., supra. Liability based solely upon appellant Pierce hearing a single exchange of words, albeit loud words, and any possible altercation apparently ending when one party moved away and the other returned to normal conversation, followed by a blow, necessarily struck less than thirty seconds later, is much too tenuous. This was not an argument which charged the tavern keeper with knowledge that peril to his patrons was impending and fixed upon him the duty to act in their protection. Fisher v. Robbins, 78 Wyo. 50, 319 P.2d 116 (1957). Before liability may be imposed for failing to act, the prevision of a reasonable person to recognize danger or harm to one in plaintiff's position is necessary. Morris v. Ortiz, supra. We cannot

conclude that a brief exchange of words will erupt into violence. Cubbage v. Leep, 137 Colo. 286, 323 P.2d 1109 (1958).

We have taken note that it is common knowledge that consumption of intoxicating liquors may excite emotions leading to violent disturbances the development of which a tavern keeper should be reasonably alert to detect and suppress. Reilly v. 180 Club, Inc., 14 N.J.Super. 420, 82 A.2d 210 (1951); Fisher v. Robbins, supra. We do not, however, find this to mean that a tavern keeper must possess extraordinary powers of foreseeability greater than those of a reasonable person in similar circumstances.

Appellants rely heavily on the recent case of Pine v. Vigil, 28 Colo.App. 601, 480 P.2d 868 (1971). There, on facts nearly the same as those in the instant case the court found the evidence insufficient to make a case against the corporate defendant and principal stockholder. Language in that opinion strongly supports appellants' position in the instant case. We note, however, that certiorari has been granted by the Colorado Supreme Court. In this regard we suspect that negligence on the part of the bar owner in *Pine* may be supported by the fact that there is evidence the owner left the bar unattended, the bartender being passed out at the end of the bar, when the incident occurred. Leaving the bar unattended could constitute negligence in itself. See De Hart v. Travelers Ins. Co., supra; Bartosh v. Banning, supra.

Having found the evidence insufficient to support the allegation of negligence against appellants we do not find it necessary to consider further claims of error. Judgment is hereby reversed and the matter remanded to superior court for new trial.

KRUCKER, C. J., concurs.

HOWARD, Judge (specially concurring).

I concur with the result in this case because there was absolutely no showing that

Bowan's intoxication was the proximate cause of the assault. For all we know, Bowan might have been a barroom fighter even when sober. I find myself, however, unable to agree that a "dramshop" law is a predicate to liability. I recognize that Collier v. Stamatis, 63 Ariz. 285, 162 P.2d 125 (1945), may militate against my position but I am of the opinion that Collier v. Stamatis, supra, is distinguishable. In Vallentine v. Azar, 8 Ariz.App. 247, 445 P.2d 449 (1968), we followed Collier v. Stamatis, supra, recognizing that we have no authority to over-rule a higher court. We stated in that case:

"While we may agree with the plaintiff's contention that there should be some remedy, other than the threat of loss of license or criminal prosecution, against a liquor licensee who wantonly sells to minors, we feel that it is for our Supreme Court or the legislature to change the present law."

Both Collier v. Stamatis, supra, and Vallentine v. Azar, supra, deal with the sale of intoxicating beverages to a minor and are not really on point. In *Collier,* the court held that the violation of the statute making it a misdemeanor to sell intoxicating liquor to a minor could not constitute negligence per se since the statute was not enacted for the public safety. The statute involved in the case at bench is A.R.S. § 4-244(14) which states that it is unlawful "[f]or a licensee or other person to serve, sell or furnish spirituous liquor to an intoxicated or disorderly person, or for a licensee or employee of the licensee to allow or permit an intoxicated or disorderly person to come into or remain on or about his premises." [1] Although there may be some disagreement as to whether the statute making it a misdemeanor to sell intoxicating liquor to a minor was enacted for the public safety, I have no doubt that A.R.S. § 4-244(14), as amended, was enacted to protect not only

the intoxicated person but also the public, whether in or outside of the premises. I therefore believe that violation of the statute constitutes negligence per se and that the only question is whether or not the plaintiff's injuries were proximately caused by the intoxication.

In recent years, we have seen a growing trend in other jurisdictions to find that sale by a bartender to an intoxicated person may be the proximate cause of injury to a third person resulting from a vehicular accident. In these cases liability is based either upon common law negligence principles or violation of a statute that is deemed negligence per se. See Waynick v. Chicago's Last Department Store, 269 F.2d 322, 77 A.L.R.2d 1260 (7th Cir. 1959); Vesely v. Sager, 5 Cal.3d 153, 95 Cal.Rptr. 623, 486 P.2d 151 (1971); Colligan v. Cousar, 38 Ill.App.2d 392, 187 N.E.2d 292 (1963); Adamian v. Three Sons, Inc., 353 Mass. 498, 233 N.E.2d 18 (1968); Rappaport v. Nichols, 31 N.J. 188, 156 A.2d 1, 75 A.L.R.2d 821 (1959); Berkeley v. Park, 47 Misc.2d 381, 262 N.Y.S.2d 290 (1965); Jardine v. Upper Darby Lodge No. 1973, Inc., 413 Pa. 626, 198 A.2d 550 (1964); Mitchell v. Ketner, 54 Tenn.App. 656, 393 S.W.2d 755 (1964).

In those cases which impose liability based on the common law, the courts state that under modern day conditions it is foreseeable that a bar patron who is intoxicated will leave the bar in an automobile and, because of his intoxication, cause an automobile accident. To my mind, if one were to adopt this theory rather than to consider violation of the statute as negligence per se, it is equally foreseeable that intoxicated individuals are unpredictable and might injure themselves or others.[2]

On the issue of proximate cause, the question arises—which drink made the intoxi-

---

1. Violation of the statute is a misdemeanor. A.R.S. § 4-246.

2. It is unnecessary that the precise form of injury might have been foreseen. Salt River Valley Water Users' Ass'n v. Cornum, 49 Ariz. 1, 63 P.2d 639 (1937).

cated person act as he did, the first drink or the last drink? The answer is that it is not necessary that the act of the bartender in serving an intoxicated person be the *only* proximate cause, it need only be *a* proximate cause. Another question that arises is whether or not the act of the person in drinking the alcoholic beverage or his negligent conduct, and, in this case his intentional act, is a superseding intervening cause thereby vitiating liability. To answer this question I would analogize to those cases where liability is imposed upon a person for negligently entrusting his automobile to a person who is obviously incompetent to drive it. The courts have no difficulty in imposing liability despite the superseding negligent act of the person driving the auto. The same is true as to intervening intentional or criminal acts which the defendant might reasonably anticipate. Vesely v. Sager, supra; Prosser, Torts, 3rd Ed., pp. 313–314.

It appears to me that either the common-law negligence theory or the negligence per se theory should be available to an injured plaintiff. As I see it, A.R.S. § 4–244(14) places a duty upon bartenders and bar owners, violation of which constitutes negligence per se. I do not believe it would constitute an unreasonable burden upon licensees to have to respond in damages for violation of a law that has long been in existence. As so aptly stated in Rappaport v. Nichols, supra:

> "Liquor licensees, who operate their businesses by way of privilege rather than as of right, have long been under strict obligation not to serve * * * intoxicated persons and if, as is likely, the result we have reached in the conscientious exercise of our traditional judicial function substantially increases their diligence in honoring that obligation then the public interest will indeed be very well served." 156 A.2d at 10.